UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARDNO ME LIMITED

Petitioner,

v.

CENTRAL BANK OF IRAQ,

Respondent.

Case No. 26-cv-52

**MEMORANDUM OF LAW IN SUPPORT OF PETITION TO RECOGNIZE AND ENFORCE ARBITRAL AWARD**

**TABLE OF CONTENTS**

**Page**

BACKGROUND ..... 1
- I. The Parties And Their Consultancy Agreement ..... 1
- II. The Arbitration Agreement ..... 2
- III. The CBI's Breaches Of The Consultancy Agreement And Improper Arrest Of CME Personnel ..... 2
- IV. The ICC Arbitration ..... 4
- V. The Award ..... 6
- VI. The CBI's Failed Attempt To Vacate The Award ..... 6
- VII. Three Other New York Convention Jurisdictions Enforce The Award ..... 8
- VIII. The CBI Has Failed To Pay The Award And The Costs Orders Made Against It ..... 8

ARGUMENT ..... 9
- I. This Court Has Jurisdiction And Venue Is Proper In This District ..... 9
  - A. This Court Has Subject Matter Jurisdiction Over This Action To Recognize and Enforce A New York Convention Award ..... 9
  - B. This Court Has Personal Jurisdiction Over The CBI ..... 9
  - C. Venue Is Proper In This District ..... 12
- II. The New York Convention And U.S. Law Require Enforcement Of The Award ..... 13
- III. There Are No Grounds For Refusing Recognition ..... 14

CONCLUSION ..... 17

## Cases

*CC/Devas (Mauritius) Ltd. v. Antrix Corp. Ltd.*,
145 S. Ct. 1572 (2025)....................11

*Commercial Bank of Kuwait v. Rafidain Bank*,
15 F.3d. 238 (2d Cir. 1994)....................10

*Commodities & Mins. Enter. Ltd v. CVG Ferrominera Orinoco, C.A.*,
49 F.4th 802 (2d. Cir. 2022)....................14

*Corporacion Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion Y Produccion*,
832 F.3d 92 (2d Cir. 2016) (Winter, J., concurring)....................12

*Creighton v. Gouvernement du Quatar,* Cour d'appel [CA][Paris], Jul. 6, 2000,
No. 98-19.068....................11

*Dumitru v. Princess Cruise Lines, Ltd.*,
732 F. Supp. 2d 328 (S.D.N.Y. 2010)....................9

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*,
403 F.3d 85 (2d Cir. 2005)....................13

*General Dynamics United Kingdom Limited v. Libya*,
[2025] EWCA (Civ) 134....................11

*Huaxintong Int'l Inv. Mgmt Ltd. v. Hongkun USA Inv. Ltd.*,
2025 WL 2178212 (S.D.N.Y. Aug. 1, 2025)....................9

*Molecular Dynamic, Ltd. v. Spectrum Dynamics Medical Limited*,
143 F.4th 70 (2d Cir. 2025)....................6

*Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier (RAKTA)*,
508 F.2d 969 (2d Cir. 1974)....................16

*Saudi Iron & Steel Co. v. Stemcor USA Inc.*,
1997 WL 642566 (S.D.N.Y. Oct. 17, 1997)....................16

*Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.*,
668 F.3d 60 (2d Cir. 2012)....................9

*Telenor Mobile Commc'ns AS v. Storm LLC*,
584 F.3d 396 (2d Cir. 2009)....................14

*Temsa v. CH Bus Sales*,
2022 WL 3974437 (S.D.N.Y. Sep. 1, 2022)....................14

*Valentino S.p.A. v. Mrinalini, Inc.*,
2024 WL 779339 (S.D.N.Y. Feb. 26, 2024)....................13

*Walker Intern. Holdings Ltd. v. Republic of Congo*,
395 F.3d 229 (5th Cir. 2004)....................10, 11

*Zeiler v. Deitsch*,
500 F.3d. 157 (2d Cir. 2007)....................14

**Statutes**

9 U.S.C. § 203 ....................9

9 U.S.C. § 207 ....................13, 15

28 U.S.C. § 1330....................9, 10

28 U.S.C § 1391....................12

28 U.S.C. § 1603....................10

28 U.S.C. § 1605....................10

28 U.S.C. § 1611....................11

9 U.S.C. §§ 201-208....................9

## PRELIMINARY STATEMENT

Petitioner Cardno ME Limited ("CME") respectfully submits this Memorandum of Law in support of its Petition to recognize and an arbitral award of $11,390,028 plus interest issued in Paris, France, on February 26, 2023 (the "Award") against the Central Bank of Iraq ("CBI") in International Chamber of Commerce ("ICC") Case No. 26290/AYZ/ELU (the "Arbitration"). A court at the place of arbitration, the Cour d'Appel de Paris ("Paris Court of Appeal")—the only jurisdiction in the world with the power to vacate the Award—rejected the CBI's challenge, recognized the Award and ordered the CBI to pay costs. Despite the Award being fully enforceable at the seat of the arbitration and elsewhere, the CBI has failed to pay any amounts due thereunder.

Accordingly, CME requests that this Court (1) enter an order confirming and recognizing the Award, and (2) enter judgment against the CBI and in CME's favor in the amount of $11,390,028, plus interest.

A certified copy of the Award is attached as Exhibit 1 to the accompanying Declaration of Jason W. Myatt dated January 5, 2026 (the "Myatt Decl."), and a certified copy of the agreement between the parties upon which the Arbitration was based is attached as Exhibit 2 thereto.

## BACKGROUND

### I. The Parties And Their Consultancy Agreement

CME is a multidisciplinary construction management and engineering consulting firm incorporated under the laws of the United Arab Emirates. Myatt Decl. Ex. 1 ("Award"), ¶¶ 1, 12. The CBI is the central bank of Iraq, wholly owned by Iraq, and incorporated in Iraq. Award, ¶ 5; Myatt Decl. Ex. 3. On May 8, 2016, CME and the CBI entered into a Consultancy Agreement (the "Consultancy Agreement") pursuant to which CME provided project management services to

CBI for the construction of the CBI's new headquarters in Baghdad, one of the designs of renowned architect Zaha Hadid. *Id.*, ¶ 14; Myatt Decl. Ex. 2.

## II. The Arbitration Agreement

The Consultancy Agreement contains an arbitration agreement with a three-tiered dispute resolution mechanism. "If any dispute ar[ose] out of or in connection with th[e] Agreement" the Parties agreed to "meet in a good faith effort to resolve the dispute." Myatt Decl. Ex. 2, § 8.1.1. If good faith negotiation did not resolve the dispute, the parties agreed to "mediation." Myatt Decl. Ex. 2, § 8.1.1. If mediation failed, the parties agreed that disputes would be resolved by arbitration "undertaken under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules." *Id.* §§ 8.2.7, 8.3.2. The parties also agreed that "the venue of arbitration shall be at the International Court of Arbitration located in Paris-France" but that agreement only is reflected in the Arabic version of the Consultancy Agreement. Award, ¶ 188.

## III. The CBI's Breaches Of The Consultancy Agreement And Improper Arrest Of CME Personnel

Under the Consultancy Agreement, the CBI was obligated to pay CME "the amounts due to [CME]…30 days from the date of [the CBI's] receipt of the consultant invoice," and was not permitted to "withhold any payment of any fee properly due to [CME] without giving [CME] notice of [its] intention to withhold payment, with reasons, no later than four days prior to the final date for payment." Myatt Decl. Ex. 2, §§ 5.2.1-5.2.2. If the CBI sought to contest any of CME's invoices, it was required to "give a notice of [its] intention to withhold payment with reasons" and could not "delay payment on the remainder of the invoice." *Id.*, § 5.5.1.

As part of its contractual obligations, CME provided a performance bond to the CBI in the form of a back-to-back guarantee[1] in the amount of $1,666,000 (the "Performance Bond")—representing 5% of the value of the total amount of the Consultancy Agreement. Myatt Decl. Ex. 2, §§ 5.1.5, 5.8.1; Award, ¶¶ 391, 400. The CBI was obligated to release the Performance Bond to CME "after completion of all [CME's] services." Myatt Decl. Ex. 2, § 5.1.5.

Until September 2020, the CBI paid 32 of CME's invoices in full, which together amounted to $21,898,474. Award, n. 148. Over 32 months, each of those monthly invoices was paid by the CBI in U.S. dollars through payments routed through New York. Specifically, the Parties' course of conduct was as follows: (1) CME would submit an invoice with a covering letter to the CBI; (2) once approved, the CBI would send a letter to the TBI asking it to release the amount; (3) the TBI would then inform JP Morgan in New York to make the payment; (4) JP Morgan in New York would, in turn, credit Emirates NBD's account at Citibank New York; and (5) once the funds were with Emirates NBD NY, it would make the payment into CME's account at Emirates NBD Dubai. Myatt Decl., ¶ 9, Ex. 7.

However, from September 2020 onwards, the CBI failed to pay CME's invoices, which amounted to $5,847,530. Award, ¶ 296, n. 148. The CBI did not provide any reasons for its failure. Award, ¶¶ 319-22. On March 7, 2021, CME gave notice to the CBI that as a result of its failure to pay CME's invoices "CME w[ould] be forced to demobilize their site-based team as of 31 March 2021." However, on March 31, 2021, CME notified the CBI that it would suspend its demobilization pending an April 7, 2021 negotiation that had subsequently been scheduled between the parties' representatives to discuss CME's unpaid invoices. Award, ¶¶ 349-50. That

[1] The Emirates NBD Bank issued a counter-guarantee in favor of the Trade Bank of Iraq ("TBI"), and the TBI issued a guarantee in the CBI's favor.

meeting and related negotiations were the first step under the Parties' dispute resolution provision. Myatt Decl. Ex. 2, § 8.1.1.

Upon their arrival at the April 7 meeting, CME's director Mr. Robert Pether and project manager Mr. Khaled Radwan were unlawfully arrested and told to drop CME's payment claims and to continue the project. Award, ¶ 351; Myatt Decl. Ex. 9. One year into their detention, the United Nations Working Group on Arbitrary Detention concluded that their arrest was unlawful. Myatt Decl. Ex. 9. Despite pleas from CME, their families, and the United Nations, Mr. Pether and Mr. Radwan remained unlawfully detained by Iraq for over four years. *Id.* They were conditionally released in June 2025. *Id.* Reportedly, their release was only due to Mr. Pether's poor health. Despite being nationals of Australia and Egypt, they still have not yet been permitted to leave Iraq. Myatt Decl. Ex. 9.

## IV. The ICC Arbitration

On May 4, 2021, CME issued a mediation notice to the CBI. Award, ¶ 281. After having received no response from the CBI, on June 2, 2021, CME commenced arbitration by filing a Request for Arbitration with the ICC, seeking payment of its outstanding invoices and the balance of the amount due to it under the Consultancy Agreement. Award, ¶ 21. The ICC duly notified the CBI, but the CBI did not file an Answer. Award, ¶¶ 23, 26.

On August 5, 2021, the ICC's International Court of Arbitration ("ICC Court") fixed Paris, France as the place of arbitration. Award, ¶ 190. On August 19, 2021, the ICC Court appointed Mr. Bassam Mirza as sole arbitrator (the "Arbitrator"), thus constituting the arbitral tribunal. Award, ¶¶ 11, 30. Both the ICC and the Arbitrator provided notice to the CBI of the proceedings and developments in the arbitration and repeatedly invited it to participate in the proceedings. Award, ¶ 150.

While the arbitration was pending, on September 20, 2021, CME learned that the CBI had made a call on the Performance Bond on the basis that CME had not fulfilled its obligations under the Consultancy Agreement. Award, ¶ 392. To prevent the encashment of the guarantee supporting the Performance Bond, CME successfully applied to the Dubai Courts for an attachment order. Award, ¶ 393. CME then asked the Arbitrator to order the CBI to reimburse CME for the costs of those proceedings and to order the CBI to release the Performance Bond. Award, ¶¶ 394-97.

Following several rounds of written submissions and an evidentiary hearing conducted on September 8, 2022, the Arbitrator declared the arbitration proceedings closed on December 13, 2022 in accordance with Article 27 of the ICC Rules of Arbitration ("ICC Rules"). Award, ¶ 138; *see also* Myatt Decl. Ex. 6, Art. 27. Pursuant to Article 27 of the ICC Rules, "[a]fter the proceedings are closed, no further submission or argument may be made, or evidence produced, with respect to the matters to be decided in the award, unless requested or authorized by the arbitral tribunal." Award, ¶ 150 (reproducing Article 27 of the ICC Rules); Myatt Decl. Ex. 6, Art. 27. On December 16, 2022, the Arbitrator sent his draft Final Award to the ICC for scrutiny. Award, ¶ 139. On December 19, 2022, the ICC informed the parties of its receipt of the draft Award for scrutiny. *Id*.

On January 1, 2023, after having chosen not to participate in the arbitration and knowing that the Arbitrator had submitted his draft final Award to the ICC for review, the CBI appeared in the arbitration and made an unauthorized submission including evidence that it had not sought the Arbitrator's authorization to introduce. Award, ¶ 176. After inviting the parties' comments on the CBI's request, on January 18, 2023, the Arbitrator excluded the CBI's submission, finding that the CBI's "lack of participation during the normal course of the[] proceedings despite being constantly invited to participate" meant that "granting [the CBI's] request to make submissions of fact and

law after the closing of the proceedings would have the effect of starting the evidential process anew for no justified reason." Award, ¶ 150.

## V. The Award

At its session of February 17, 2023, the ICC Court scrutinized and approved the draft Award. Award, ¶ 168. On February 26, 2023, the Arbitrator rendered the 93-page final Award, which the ICC notified to the parties on February 27, 2023. Myatt Decl. Exs. 1, 10.

The Arbitrator awarded CME $5,847,530 for its outstanding invoices and $4,342,924.15 as compensation for being deprived of the remaining value of the Consultancy Agreement with simple interest running on these amounts from June 2, 2021, at the rate of 5% per annum, up to and until payment by the CBI. Award, ¶ 445(4)-(6). The Arbitrator found that the CBI's attempt to call the Performance Bond was wrongful, ordered the CBI to return CME's Performance Bond[2] and awarded CME $14,506 as compensation for its legal costs with simple interest running on this amount from January 6, 2022, at the rate of 5% per annum, up to and until payment by the CBI. Award, ¶ 445(8)-(10). As to the costs of arbitration, the Arbitrator ordered the CBI to reimburse CME $230,000 in ICC arbitration costs, $7,304 in VAT payments relating to those costs, and $947,763.56 for CME's reasonable legal costs. The Arbitrator decided not to award interest on those costs. Award, ¶ 445(11)-(13).

## VI. The CBI's Failed Attempt To Vacate The Award

Under the New York Convention, only Courts at the place of arbitration are empowered to vacate an international arbitration award. *See, e.g.*, *Molecular Dynamic, Ltd. v. Spectrum Dynamics Medical Limited*, 143 F.4th 70, 84 (2d Cir. 2025) (awards may only be vacated in the

[2] CME does not seek enforcement of this order because, after the CBI exhausted all possible avenues of appeal, the UAE courts ordered the release of the bank guarantee in May 2025.

country where they were made). On March 17, 2023, the CBI applied to the Paris Court of Appeal—seeking to vacate the Award on four main grounds: (1) international public policy, arguing that there was material fraud, in relation to the parties' entry into the Consultancy Agreement because the CBI misunderstood CME's qualifications and relationships with certain other companies, (2) international and French public policy, based on procedural fraud in relation to the arbitration because the Arbitrator refused to admit the CBI's belated submissions, and thus violated the "adversarial principle"; (3) the Arbitrator failed to comply with his mandate; and (4) the Arbitrator's alleged lack of impartiality. Myatt Decl. Ex. 11, ¶ 6.

On November 9, 2023, the Paris Court of Appeal granted CME's *exequatur* application, thus declaring the Award enforceable, and ordered the CBI to pay CME's legal costs and incidental costs of EUR 8,000. *Id.* ¶ 7.

On January 21, 2025, the Paris Court of Appeal rejected the CBI's set aside application and confirmed the *exequatur* of the Award. Myatt Decl. Ex. 11, § IV. The Court found that the CBI conceded that it had received notification of the arbitration proceedings and that the CBI failed to provide a valid reason for its failure to participate therein. Myatt Decl. Ex. 11, ¶ 73. The Court found that the Tribunal's decision to reject the CBI's belated participation in the proceedings was reasoned, which meant that the CBI could not validly claim a violation of its right to be heard and had therefore failed to establish a breach of procedural public policy. Myatt Decl. Ex. 11, ¶¶ 78-82. The Paris Court of Appeal also rejected the CBI's claim that the Tribunal had failed to rule on its claims of fraud against CME, finding that the Arbitrator had resolved all the claims validly submitted to him, and that the Arbitrator's rejection of the CBI's belated claim was not a sufficient ground to annul the Award under French law. Myatt Decl. Ex. 11, ¶¶ 111-15. Finally, the Paris Court of Appeal also rejected the CBI's claim that the arbitrator was partial, finding that the

Arbitrator had conducted an active and objective proceeding despite the CBI's absence, including rejecting two applications by CME for interim relief. Myatt Decl. Ex. 11, ¶¶ 126-134. In addition to upholding the Award, the Paris Court of Appeal ordered the CBI to pay CME's legal costs and incidental costs of €200,000. Myatt Decl. Ex. 11, § IV, ¶ 7.

## VII. Three Other New York Convention Jurisdictions Enforce The Award

The CBI's refusal to pay its obligations has forced CME to pursue recognition and enforcement actions. CME has obtained recognition of the Award in the Netherlands, and two other jurisdictions.

In a July 16, 2024 decision, the Amsterdam Court of Appeal recognized and enforced the Award over the CBI's objections. The CBI opposed CME's Dutch recognition application making mirror arguments to those it raised in Paris, specifically that recognition of the Award would be contrary to both Dutch and international public policy, again relying on its arguments that both material and procedural fraud were present, and that the Arbitrator exceeded his mandate and was partial to CME. Myatt Decl. Ex. 14, § 3.4.1. The Amsterdam Court of Appeal refused to grant a stay of enforcement of its judgment pending set-aside proceedings in Paris (which had not yet been decided) and ordered the CBI to bear the costs of the proceedings. Myatt Decl. Ex. 14, § 4. Courts in two additional New York Convention jurisdictions likewise have enforced the Award. Myatt Decl. ¶ 16.

## VIII. The CBI Has Failed To Pay The Award And The Costs Orders Made Against It

To date, the CBI has not paid the Award or expressed any intention to pay the amounts due to CME under the Award. Myatt Decl. ¶ 18, Ex. 13. CME issued a demand notice to the CBI seeking payment of the Award as well as the Paris Court of Appeal's costs orders. Myatt Decl. Ex. 13.

## ARGUMENT

### I. This Court Has Jurisdiction And Venue Is Proper In This District

#### A. This Court Has Subject Matter Jurisdiction Over This Action To Recognize and Enforce A New York Convention Award

The Court has subject matter jurisdiction over this action to recognize and enforce the Award pursuant to 9 U.S.C. § 203 because this proceeding "falls under the [New York Convention]." 9 U.S.C. § 203; *see also, e.g*., *Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (subject matter jurisdiction exists by virtue of 9 U.S.C. § 203 over actions to confirm arbitration awards under the New York Convention). The Award falls within the scope of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997 (the "New York Convention"), as applied through the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208 because: (1) the Consultancy Agreement is a written agreement between the Parties; (2) the arbitration was seated in Paris, France, and France is a party to the New York Convention; (3) the subject matter of the agreement—the construction of a new headquarters for the CBI—is commercial; and (4) the agreement is not entirely domestic (US) in scope. *Huaxintong Int'l Inv. Mgmt Ltd. v. Hongkun USA Inv. Ltd.*, 2025 WL 2178212, at *3 (S.D.N.Y. Aug. 1, 2025) (quoting *Dumitru v. Princess Cruise Lines, Ltd.*, 732 F. Supp. 2d 328, 335 (S.D.N.Y. 2010) (setting forth the four basic requirements for application of the New York Convention).

#### B. This Court Has Personal Jurisdiction Over The CBI

This Court has personal jurisdiction over the CBI because it is an agency or instrumentality of Iraq under 28 U.S.C. § 1330(b), which confers "[p]ersonal jurisdiction over a foreign state" and any "agency or instrumentality" thereof "as to every claim for relief" for which the foreign state does not enjoy sovereign immunity under 28 U.S.C. §§ 1605-1607, and over which the Court has

subject matter jurisdiction. 28 U.S.C. § 1330(b); 28 U.S.C. § 1603(a)-(b). The CBI is an instrumentality of a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), because its shares and capital are entirely owned by the Republic of Iraq. 28 U.S.C. § 1603(b). Myatt Decl. Ex. 3 (Central Bank Law as amended in 2017), Art. 1(1) ("The capital of the [CBI] shall be…owned completely by the state"). Pursuant to 28 U.S.C. § 1603(a), a "foreign state" includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in 28 U.S.C. § 1603(b). 28 U.S.C. § 1603(a). The Second Circuit has confirmed that the CBI is an agency or instrumentality of the Republic of Iraq. *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d. 238, 239 (2d Cir. 1994) (finding the "CBI is the central banking authority in Iraq, analogous to the Federal Reserve in the United States" and thus is an agency or instrumentality of Iraq). The CBI is not immune from the jurisdiction of this Court because the FSIA denies immunity to foreign states or their instrumentalities in actions to confirm arbitral awards governed by the New York Convention, such as the Award here. 28 U.S.C. § 1605(a)(6).

In addition, the CBI agreed to abide by the ICC Rules. Article 35(6) of the ICC Rules provides that, "[e]very Award shall be binding on the parties. By submitting the dispute to arbitration under these Rules, the parties undertake to carry out any Award without delay and shall be deemed to have waived their right to any form of recourse insofar as such waiver can validly be made." Myatt Decl. Ex. 6, Art. 35(6). The CBI's agreement to abide by the ICC Rules precludes it from asserting sovereign immunity. *Walker Intern. Holdings Ltd. v. Republic of Congo*, 395 F.3d 229, 234 (5th Cir. 2004) (holding that by virtue of agreeing to the ICC Rules, the Republic of Congo waived its sovereign immunity and considering availability of sovereign assets for

execution, (quoting ICC Rule 28(6)[3]). Multiple foreign courts have interpreted the ICC Rules in a similar fashion. *See, e.g.*, *General Dynamics United Kingdom Limited v. Libya*, [2025] EWCA (Civ) 134, ¶¶ 43-45 (finding adoption of ICC Rules served as a waiver of immunity); *Creighton v. Gouvernement du Quatar,* Cour d'appel [CA][Paris], Jul. 6, 2000, No. 98-19.068 (finding that Qatar had "waive[d] its immunity from execution" by "accept[ing] to submit to arbitration in conformity with the Rules of Arbitration of the ICC").[4] Myatt Decl. Ex. 15, at 2.

Whenever an exception to immunity under the FSIA applies, "jurisdiction usually follows" because its jurisdictional provision, 28 U.S.C. § 1330, "pegs both subject-matter and personal jurisdiction to the exceptions." *CC/Devas (Mauritius) Ltd. v. Antrix Corp. Ltd.*, 145 S. Ct. 1572, 1578 (2025). Personal jurisdiction exists under the FSIA so long as "an immunity exception applies and service is proper" and "nothing in the text [] requires a minimum-contacts analysis." *Id.*, at 1580, 1582. As a result, this Court has personal jurisdiction over the CBI in this proceeding regardless of the nature or extent of the CBI's contacts with New York or the United States.

In any event, the CBI regularly does business in this district, including under the Consultancy Agreement between the parties that the arbitration was based on. That Agreement provides for payments in U.S. dollars, which were purposefully and repeatedly routed through New York correspondent banks before reaching CME. Myatt Decl. Ex. 2, § 5.3.1, Appx. 3; Myatt Decl. Ex. 7. This conduct over 32 invoices was deliberate and repeated. Specifically, the Parties' course of conduct, which includes the CBI using New York correspondence accounts, was as follows: (1) CME would submit an invoice with a covering letter to the CBI; (2) once approved,

[3] This same provision applies here, but the text of Article 28(b) of the 1998 ICC Rules applied in *Walker* appears at Article 35(6) of the applicable 2021 version of the ICC Rules.

[4] Further, because the CBI "waived its immunity from attachment in aid of immunity or execution," 28 U.S.C. § 1611(b)(1), it cannot invoke its status as a sovereign central bank to avoid execution on the Award upon its recognition and entry of judgment.

the CBI would send a letter to the TBI asking it to release the amount; (3) then the TBI would inform JP Morgan in New York to make the payment and JP Morgan in New York would, in turn, credit Emirates NBD's account at Citibank New York; and (4) once the funds were with Emirates NBD NY, it would make the payment into CME's account at Emirates NBD Dubai. Myatt Decl. Ex. 7.

Moreover, the CBI itself has regular, repeat contact with New York, including daily management of accounts containing commercial funds (namely revenue from oil sales) at the Federal Reserve Bank in New York. Myatt Decl. Ex. 4, at 4, Myatt Decl. Ex. 5, at 56. The CBI has managed such funds since 2003. Myatt Decl. Ex. 4, at 4. Over the past two years, the CBI itself reportedly has invested billions of U.S. dollars at the Federal Reserve Bank in New York. Myatt Decl. Ex. 5, at 44. The CBI has regular, repeat contact with New York, including quarterly meetings with the U.S. Federal Reserve Bank and U.S. Treasury Department, often held in New York. Myatt Decl. Ex. 8.

**C. Venue Is Proper In This District**

Venue is proper in this district because a civil action against agencies or instrumentalities of foreign states may be brought in "any judicial district in which the agency or instrumentality is licensed to do business or is doing business." 28 U.S.C § 1391(f)(3). An entity does business in a district where it engages in "substantial activity of a commercial nature" that is "more than an isolated instance." *Corporacion Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion Y Produccion*, 832 F.3d 92, 118 (2d Cir. 2016) (Winter, J., concurring). Here, the CBI has engaged in substantial and continuous commercial banking activity in this district through, among other things, its deliberate, repeated and ongoing use of accounts at the Federal Reserve Bank of New York. Starting in 2003, the CBI has maintained and managed bank accounts belonging to the Development Fund of Iraq ("DFI") in the Federal Reserve Bank of New York, in

which proceeds from commercial activities, including the proceeds of "export sales of petroleum, petroleum products and natural gas from Iraq" were deposited. Myatt Decl. Ex. 4, at 4. In May 2014, the DFI's funds were transferred directly into the CBI's account in the Federal Reserve Bank of New York, and a second account, which the CBI also manages, was opened in New York "to deposit oil shipments, reclaimed funds, and frozen assets." Myatt Decl. Ex. 5, at 56. These accounts are in addition to the CBI's U.S. dollar reserve accounts. In 2024, the CBI itself reportedly invested 2,456 billion Iraqi dinars (approximately $1.87 billion) in the Federal Reserve Bank in New York. It had invested 6,095 billion Iraqi dinars ($4.6 billion) in 2023. Myatt Decl. Ex. 5, at 44.

## II. The New York Convention And U.S. Law Require Enforcement Of The Award

Any party to an arbitration resulting in an arbitration award that falls under the New York Convention may seek an order enforcing the award from a district court within three years of the award. 9 U.S.C. § 207; *see also id*. § 203 ("The district courts of the United States ... shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."). This action is timely because the Award was made on February 26, 2023.

A district court "shall confirm" an arbitration award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id*. § 207; *Valentino S.p.A. v. Mrinalini, Inc.*, 2024 WL 779339, at *4 (S.D.N.Y. Feb. 26, 2024) ("Article V of the Convention specifies seven exclusive grounds upon which courts may refuse to recognize an award."). The "party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses" applies and this burden is a "heavy one, as the showing required to avoid summary confirmation is high." *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005) (citations omitted).

Given the strong public policy in favor of international arbitration, review of arbitral awards under the New York Convention is "very limited" "in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009) (citations omitted). Thus, enforcement under the New York Convention is a "summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Zeiler v. Deitsch,* 500 F.3d. 157, 169 (2d Cir. 2007) (citations omitted). Indeed, a district court judge "does little more than give the award the force of a court order." *Temsa v. CH Bus Sales*, 2022 WL 3974437, at *4 (S.D.N.Y. Sep. 1, 2022) (quoting *Zeiler*, 500 F.3d at 169). In doing so, a district court affords significant deference to the arbitrator's findings. *See Commodities & Mins. Enter. Ltd v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 809 (2d. Cir. 2022) (a district court should be "extremely deferential" to the findings of the arbitrator).

**III. There Are No Grounds For Refusing Recognition**

As both the Paris Court of Appeal and the Amsterdam Court of Appeal have confirmed (Myatt Decl. Exs. 11, 14), there are no grounds to deny enforcement of the Award under the New York Convention. Article V of the New York Convention permits courts to deny enforcement only where the party opposing enforcement shows:

a. the parties to the arbitration agreement were "under some incapacity" or the agreement "is not valid" under the law designated by the parties, or, in the event they have not designated any, the law of the country where the award was made; or

b. "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case;" or

c. "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration," although any "part of the award which

contains decisions on matters submitted to arbitration may be recognized and enforced;" or

d. "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place;" or

e. "[t]he award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."

21 U.S.T. 2517, Art. V(1), 9 U.S.C. § 207 ("the court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention."). Additionally, "[r]ecognition and enforcement of an arbitral award may also be refused if" that party shows or this Court finds that:

f. "[t]he subject matter of the difference is not capable of settlement by arbitration under" U.S. law; or

g. "[t]he recognition or enforcement of the award would be contrary to the public policy" of the U.S.

21 U.S.T. 2517, Art. V(2). None of these grounds apply here.

In its challenge to the Award before the Paris Court of Appeal and its opposition to enforcement of the Award by the Dutch Courts, the CBI relied on four primary arguments, that: (a) the Award violates international public policy (and French and Dutch policy, respectively) because there was material fraud in relation to the parties' entry into the Consultancy Agreement, namely, because the CBI mistakenly believed that CME was related to certain other companies; (b) the Award violated public policy based on alleged procedural fraud in the conduct of the arbitration because the Arbitrator did not reopen the proceedings and admit the CBI's belated submission, thus also violating the CBI's due process; (c) the Arbitrator did not comply with his mandate because he refused to admit the CBI's belated submission; and (d) the Arbitrator was partial to CME.

The Paris Court of Appeal—which, unlike this Court, had the power to vacate the Award—rejected every ground raised by the CBI and confirmed the enforceability of the Award. Myatt Decl., Ex. 11, § IV. Two of the CBI's three main objections were based on public policy. In this Circuit, "[e]nforcement of foreign arbitral awards may be denied on [a public policy basis] only where enforcement would violate the forum state's most basic notions of morality and justice." *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier (RAKTA)*, 508 F.2d 969, 974 (2d Cir. 1974) (citations omitted). Enforcement of the Award, which resolves a private commercial dispute and awards monetary compensation to one of the parties, does not contravene the most basic notions of morality and justice in New York (or indeed anywhere in the United States). As it was in France, the Netherlands, and two other enforcement jurisdictions, enforcement of the Award is entirely consistent with United States public policy.

Moreover, courts in this district narrowly construe public policy defenses and have rejected them when they are based on alleged denials of due process, as the Paris Court of Appeal did regarding the CBI's second objection. *See, e.g.*, *Saudi Iron & Steel Co. v. Stemcor USA Inc.*, 1997 WL 642566, at *2-3 (S.D.N.Y. Oct. 17, 1997) (rejecting public policy defense based on alleged denial of due process); Myatt Decl. Exs. 1, 13. As noted in the Award, the CBI was "notified of the proceedings since their beginning," "constantly invited to participate," "granted every opportunity to reply and take positions on [CME's] submissions throughout the proceedings" and "was reminded of the consequences of its non-participation" and yet chose not to participate until after it was informed that the Arbitrator had sent his Award to the ICC for scrutiny. Award, ¶ 150. The Paris Court of Appeal found there was no infringement of the principle of equality of arms or the "adversarial principle" (*i.e.*, due process), as CBI's decision not to participate in the arbitration until after the proceedings were closed was attributable to the CBI's own unjustified failure to

participate in the arbitration despite having received full notice of the proceedings. Myatt Decl. Ex. 11, ¶¶ 77-82. Similarly, the Court found that the Arbitrator did not fail in his mandate by not accepting the CBI's belated submission, as that submission was not validly before the Arbitrator. *Id*. ¶¶ 90-94.

As for the fourth ground the CBI raised which was based on the Arbitrator's alleged lack of impartiality, the Paris Court of Appeal rejected the CBI's arguments, noting that the Arbitrator: preserved the CBI's right to be heard at every stage, proactively sought input from both parties, dismissed two requests for provisional measures that CME had made, conducted an active, impartial investigation of facts by posing questions to CME, and employed neutral fact-based language throughout his reasoned Award. Myatt Decl. Ex. 11, ¶¶ 126-134. In short, the CBI's objection failed because it was not supported by the facts.

As there are no valid defenses that the CBI can raise, this Court should enforce the Award as courts in four other New York Convention jurisdictions have done already.

## CONCLUSION

CME respectfully asks this Court to recognize and enforce the Award under the New York Convention, as applied through the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208, enter judgment in favor of Cardno ME Limited and against the Central Bank of Iraq in the full amount of the Award, together with interest and such other and further relief as the Court may deem just, proper, and equitable.

Specifically, CME, respectfully requests that the Court enter an order:

a. Confirming, recognizing and enforcing the Award and entering Judgment thereon in favor of CME pursuant to 9 U.S.C. § 207 and Article III of the New York Convention;

b. ordering the Central Bank of Iraq to:

i. pay CME $10,190,454.15 in principal for unpaid invoices and lost profits,

ii. pay CME interest on that principal at the rate of 5% per annum from June 2, 2021 until the date of entry of judgment;

iii. pay CME $14,506 in principal for legal costs related to the CBI's attempt to call the Performance Bond;

iv. pay CME interest on that principal at the rate of 5% per annum thereon from January 6, 2022 until the date of entry of judgment;

v. pay CME $1,185,067.56 for costs of arbitration and legal fees; and

vi. pay CME post-judgment interest on each of the above sums at a rate to be determined by the Court.

c. granting such other relief that this Court deems necessary and proper.

Dated: January 5, 2026
New York, New York

Respectfully submitted,

By: s/ Jason Myatt

______________________

Robert L. Weigel (RWeigel@gibsondunn.com)
Jason W. Myatt (JMyatt@gibsondunn.com)
Victoria R. Orlowski (VOrlowski@gibsondunn.com)
200 Park Avenue
New York, NY 10166
Telephone: 212.351.4000

Matthew S. Rozen (MRozen@gibsondunn.com)
(*pro hac vice* application forthcoming)
1700 M. St. NW
Washington, DC 20036
Telephone: 202.955.8500

*Attorneys for Petitioner, Cardno ME Limited*